May you proceed in the clerk will call the next case. 313-0429 People of the State of Illinois, Appalachia, by Laura DeMichael v. Joshua Irby. Accounts by Dimitri Galtz. Good morning. Nice to see you both again this morning. Mr. Galtz, you may proceed. Good morning, Your Honors. May it please the Court of Counsel, Dimitri Galtz, in the Appellate Defender's Office on behalf of Joshua Irby, defendant-appellant. Your Honors, Mr. Irby was convicted of aggravated unlawful use of a weapon, Class II, and he was sentenced to six years' imprisonment without following a stipulated bench trial. We've raised three issues on appeal. We first argue that the evidence at the stipulated bench trial was insufficient to convict him of this offense. Second, we argue that the trial court erred by denying Mr. Irby's motion to suppress because he was seized on a, basically on a mistake of law, believing that it was illegal for him to be parked on a residential street in Peoria at night without using parking lights. And finally, we argue that a monetary issue requesting that this Court reduce the monetary assessments imposed by the serial clerk to $120 actually contemplated and ordered by a trial judge. And alternatively, in the event that this Court does not agree that a reduction is appropriate, to simply remand for the reimposition of fines and fees, and that is something that the State agrees with as a remedy. Although all of these issues merit the Court's attention, I'll be resting on my brace with regards to the monetary issue and also the issue with the motion to suppress. I'll just be addressing the claim of insufficient evidence. Certainly, if Your Honors have any questions regarding the other issues, I'll be more than happy to address them. The indictment in this case charged Mr. Irby with aggravated, unlawful use of a weapon Class II, alleging that he knowingly possessed a loaded, uncased firearm in a motor vehicle and that that firearm was immediately accessible to him. If you look at the statute and the case law interpreting that statute, particularly our Supreme Court's opinion in Holmes, it's clear that one of the elements of that offense would be that the firearm was uncased. The State does not dispute this point on appeal. Therefore, under Illinois law, the State has burden of proving a reasonable doubt that that firearm recovered from the vehicle was, in fact, uncased. The State does not meet that burden here. There was absolutely no evidence at the stipulated bench trial that the firearm was, indeed, uncased. The evidence at the stipulated bench trial consisted of the testimony and the evidence from the motion to suppress hearing and, additionally, a short stipulation by the parties before the trial court made its finding. There was no mention made of the firearm being uncased. Now, the State on appeal argues that, well, if the firearm was cased, then there would have been a mention at the stipulated bench trial that the officers found the firearm uncased. But since there was no evidence that the firearm was uncased, we can reasonably infer that the firearm was uncased. That's not how a criminal justice system works. The State has a burden of proving its claim with evidence. Charters of fact find facts based on the evidence, not from the absence of evidence. That is called speculation. Now, simply because this is a stipulated bench trial, it does not change the State's obligation to prove its case beyond a reasonable doubt. The defense did not stipulate that the evidence was sufficient to convict. Therefore, the State had the obligation of ensuring that the evidence in the stipulation satisfied all the elements of the offense. It failed to do so. It did not. Therefore, we respectfully ask that you reverse Mr. Kirby's conviction outright. I don't know if Your Honor has any further questions. That's all I have for you. Oh, thank you, Mr. Collins. Thank you. Mr. Michael? May it please the Court, Counsel, Lord Michael, on behalf of the people. I have a few brief remarks on each point. First, on the fines and fees point, if this Court is wondering or arising out of questions yesterday, that we've remanded these cases for imposition of fines and fees before, why hasn't this stopped yet? People note that the sentencing hearing in this case was in May of 2013. The fines and fees cases remanding and out of this district came out in 2014, and the Fourth District Williams case came out in 2013. Briefly regarding the reasonable doubt issue, read the stipulation. It's in Defendant's Statement of Facts. It says there's a gun under the seat. Defense Counsel has asked, is there any evidence he wants to present? He says no. Why does the defendant have to offer any evidence? He doesn't, but under the evidence we have, all we have is there's a gun under the seat. There's nothing... Does the gun have to be loaded? The gun has to be loaded, yes. Does the State have to put on evidence for that? Did you just assume the gun's loaded? The stipulation was that the gun was loaded. Exactly. But if it hadn't been, would we just say, well, you've got to assume the gun's loaded, everybody knows guns are loaded? No, but I believe in this case, when he says what he found was a gun, he doesn't say what he found was a case, whereas the ammunition is... Maybe he should have, or said that it didn't have to have a case. I've got a little familiarity with guns, and cases are normal. Guns are often found in cases, but he just found a gun. He didn't find a gun in a case. But really, that's the argument in the brief. I have nothing additional to add to it. I'll briefly address the motion to suppress issue two. The question is when was defendant seized, and he wasn't seized until after the officer had reasonable suspicion. The Ludeman case says to begin the analysis of approaching a person seated in a parked vehicle with the recognition that the police may approach a person seated in a parked vehicle and ask questions of that person without that encounter being labeled a seizure. Beginning there, when the officer walks up to the car, it's not a seizure. The approach isn't distinguishable from Ludeman because while there was one officer initially in Ludeman, Ludeman does state that one or two officers would be permissible. The significance of where the car pulls in is whether it's blocking the car or not. Here he pulled in behind defendant. He didn't park in the middle of the road, but it doesn't matter. The significance is whether he blocked the car or not. He didn't use his squad car lights. Simultaneous with approaching the vehicle, before he ever talked to the defendant, the officer observed an open bottle of Smirnoff Blueberry Lemonade. In defendant's lap, he observed drug paraphernalia, a hitter box in the center console. He smelled the plain odor of burnt cannabis. Regardless of any situation with the parking lights, before even asking a single question of defendant, he had reasonable suspicion based on those observations. Even if he hadn't observed them until he was at the driver's side door, that's still before asking a single question of him. Also, there's no evidence that the officer operated under the state of law either, as there's no evidence what the officer knew or didn't know of any ordinance. The people objected when defendant's counsel asked the officer whether the parking light law could be superseded by city ordinance. That objection was sustained because the trial judge viewed it as a question of law. These coppers didn't turn their red lights on? No. So, what they're subjectively thinking has nothing to do with whether they can walk up to a car? That's correct, yes. So, defendant's brief says that a traffic stop based on a state of law is unconstitutional, but the next line of all those cases is, however, that doesn't resolve the issue if the officer actually has, on the actual facts, that reasonable suspicion that the defendant is violating the law as written. There's no evidence the defendant wasn't violating the parking light law as written because to fit within the ordinance, the car has to be on the street designated by the city council, is not needing parking lights, and with sufficient illumination to illuminate a person within 200 feet. And there's just nothing on that, so there's no reason to think that the officer wasn't correct, that the parking light law was violated. And even if he was, it still doesn't matter because the officers had reasonable suspicion based on the open alcohol in the hitter box before even talking to defendant. Any questions? No? Thank you, your honors. Mr. Michael. Mr. Galapas. I have something to add. Let me refer to that. I think you addressed it in the rest of my brief. It addresses the correct issue in that, and I have something to add to that. I believe so. So, thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as soon as possible. And right now, we'll take a brief recess for public comment. Thank you for your panel. Thank you.